DAVID DREYER *et al.*

*v.*

HENRY C. DURAND *et al.*

FRAUD—*possession as agent not fraudulent as to creditors.* Where an uncle of a party, in good faith, purchased a lot of goods and put such party in possession, as agent, to carry on and conduct the business for him, the nephew to have his living and that of his family from the proceeds of sales, and nothing more, and the business was conducted by the nephew as agent, his bank account was kept in his name as agent, and he drew his checks

562 DREYER *et al. v.* DURAND *et al.* [Sept. T.

Opinion of the Court.

the same way, and on his bill heads and on his wagons was the same notification, it was *held,* on bill by a creditor whose debt was incurred before this arrangement, that the transaction was not fraudulent, and that the goods so purchased and used could not be subjected to the payment of the nephew's debt.

APPEAL from the Superior Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Messrs. ELDRIDGE & TOURTELLOTTE, for the appellants.

Messrs. FULLER & SMITH, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in equity, in the Cook circuit court, wherein the complainants, Henry C. Durand and others, doing business under the firm name of Durand Bros. & Powers, sought to subject certain goods, wares and merchandize, then being in a store under the management and control of one David Dreyer, at 219 Cottage Grove avenue, to the payment of a judgment against David Dreyer and in favor of complainants, rendered at January term, 1873, on which an execution had been returned *nulla bona.*

The allegation in the bill was, that these goods were the property of Dreyer, and that Leo Lefman, his co-defendant in this bill, was used as a cover to protect this property, and that Dreyer is fraudulently concealing his property in this way.

The bill prayed that Lefman be enjoined from creating any lien on this property and from making any assignment of his property, and that a receiver be appointed, and for general relief.

The defendants, Dreyer and Lefman, answered the bill separately and under oath, denying all the material allegations of the bill as to ownership of the goods, and denying fraud, and averring the goods were the property of Lefman and not the property of Dreyer; that the store of goods belonged to Lefman, he, Dreyer, being an agent, only, to sell the goods.

Lefman was a witness on behalf of appellees, and sustained all the statements in his answer. Dreyer, called for appellants,

also sustained them, and there was no evidence save the testimony of appellees' attorney, John Morris, to weaken them.

All the circumstances developed in the case establish, most clearly, as we think, the perfect fairness and honesty of the arrangement existing between appellants in regard to these goods. Dreyer had been "burnt out" in the disastrous fire of October 9, 1871, and with a wife and children had to face the world, and provide for their support without a dollar of his own, except what he might recover from the insurance companies. In this predicament he applied to his uncle, Leo Lefman, a man of means, doing a large business, to help him. This he did by purchasing this store of goods, Dreyer to have his living and that of his family from the proceeds of sales, and nothing more. All the business was conducted by him as agent. His bank account was kept in his name, "as agent for Mr. Lefman," and he drew his checks "David Dreyer, Agent;" on his bill heads and on his wagons was the same notification.

Dreyer was the only relative Lefman had, and after his misfortune his uncle determined to provide for him until he could do better. When Dreyer came to his uncle, "he came naked, with not money enough to start a pea-nut stand."

It is admitted by appellees, a person may enter into a contract to labor for another during his life, in consideration of his maintenance and support by such other. How does this arrangement differ in spirit from the one stated? At the time this arrangement was made between the uncle and nephew, although the latter was indebted to appellees on a liability incurred in June, 1871, he had incurred no liability to them on the faith of these goods, and, being the property of Lefman, they could not be seized to satisfy Dreyer's debts. When he dealt with appellees, subsequently, they were sufficiently warned that Dreyer was doing business as an agent and not on his own account, and his bank account, bill heads and inscription on his wagons told appellees he was not the owner of the property in which he was dealing and using.

What justice is there, under the circumstances developed in

this record, in appropriating the property of one man to pay the debts of another? None whatever.

The principal facts supposed to constitute fraud are flatly denied in the answer, the denial supported by testimony, and no evidence was given sufficient to impeach their answers or testimony.

There are no equities on the side of appellees, and the decree of the circuit court was wrong, and it must be reversed.

*Decree reversed*